ELIZABETH A. STRANGE
Acting United States Attorney
District of Arizona
Sandra M. Hansen
Arizona State Bar No. 009471
Jane L. Westby
Arizona State Bar No. 017550
Assistant U.S. Attorney
U.S. Attorney's Office
405 W. Congress Street, Suite 4800
Tucson, Arizona 85701
Telephone:  520-620-7300
Email: Sandra.Hansen@usdoj.gov
Email: Jane.Westby@usdoj.gov
Attorneys for Plaintiff

✓FILED____LODGED
____RECEIVED___COPY

2017 JUN 14 P 4: 37

CLERK US DISTRICT COURT
DISTRICT OF ARIZONA

CR 17-938  TUC CKJ (EJM)

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| United States of America,<br><br>                    Plaintiff,<br><br>        vs.<br><br>Theodore Kritza<br><br><br>                    Defendant. | **INDICTMENT**<br><br>VIOLATION:  **VICTIM CASE**<br><br>18 U.S.C. § 1344(2)<br>(Bank Fraud)<br>(Counts 1 - 9)<br><br>18 U.S.C. § 1343<br>Wire Fraud<br>(Counts 10 - 19)<br><br>18 U.S.C. § 1028(A)<br>(Aggravated Identity Theft)<br>(Counts 20 - 22)<br><br>18 U.S.C. §§ 982(a)(2)(A),<br>982(a)(2)(B), 1028(b)(5), 28 U.S.C.<br>§ 2461(c)<br>(Forfeiture Allegation) |

THE GRAND JURY CHARGES:

At all times material to this indictment:

### Introduction

1.      Defendant, Theodore Kritza ("KRITZA"), was a resident of Gilbert, Arizona.

2.    TE owned Stratosphere Sports, LLC ("Stratosphere Sports"), located in Scottsdale, Arizona.

3.    KRITZA worked for Stratosphere Sports, as TE's assistant.

4.    In 2001, RJ was a resident of Tucson, Arizona.

5.    In April of 2001, RJ hired TE to represent RJ via TE's company, Stratosphere Sports.

6.    KRITZA's responsibilities at Stratosphere Sports consisted primarily of performing "day-to-day" tasks for RJ, such as organizing RJ's finances, facilitating the payment of RJ's credit card bills, communicating with RJ's family, and assisting RJ in the purchase of automobiles and household items.

7.    In September, 2001, RJ signed a durable power of attorney granting TE authority to "exercise any act, power, right, duty, or obligation whatsoever that [RJ] ha[d] or may acquire," (hereinafter the "2001 Power of Attorney").

8.    KRITZA never received power of attorney over RJ's affairs.

9.    By 2005, KRITZA no longer worked for Stratosphere Sports and had opened his own business, Stratosphere Management, LLC ("Stratosphere Management"), located in Gilbert, Arizona.

10.    After KRITZA's employment with Stratosphere Sports ended, RJ continued to employ TE as his agent.  RJ also continued to pay Stratosphere Sports for work the company performed.

11.    At the same time, RJ also hired KRITZA to continue to provide day-to-day

assistance, including organizing RJ's financial accounts and ensuring that RJ's bills were paid.

12.     RJ agreed to pay Stratosphere Management between $90,000 and $250,000 per year for KRITZA's services.

13.     Between October 13, 2004, and December 20, 2011, KRITZA opened or assisted RJ in opening the following accounts at the Tucson branch of Alliance Bank of Arizona ("Alliance Bank"), as follows:

| Date Opened | Account Number (Last Four Digits) | Account Type | Name on Account | Account Signors |
|---|---|---|---|---|
| 10/13/2004 | 0230 | Checking | RJ, KRITZA, c/o Stratosphere Sports | RJ KRITZA |
| 7/24/2006 | 2220 | Business Checking | RJ, LLC c/o Stratosphere Sports | RJ KRITZA |
| 7/28/2006 | 2972 | Money Market | RJ, KRITZA, c/o Stratosphere Sports | RJ KRITZA |
| 4/15/2011 | 5297 | Business Checking | Stratosphere Marketing LLC | RJ KRITZA |
| 12/20/2011 | 4655 | Business Money Market | RJ, LLC c/o Stratosphere Sports | RJ KRITZA |

14.     RJ did not have an ownership interest in Stratosphere Management, LLC, Stratosphere Marketing, LLC, Stratosphere Sports, LLC, or Stratosphere Group, LLC.

15.     Beginning on or before 2005, RJ's paychecks were direct deposited into RJ's

Alliance Bank checking, account number ending in 0230 (Alliance Bank checking account 0230).

16.     KRITZA made legitimate disbursements for RJ's credit card bills, mortgages, and miscellaneous expenses from RJ's Alliance Bank checking account 0230.

17.     In addition to the accounts listed in paragraph 13, between 2005 and 2012, KRITZA opened approximately eighteen (18) bank accounts with Alliance Bank, Bank of America, Mutual of Omaha, and JP Morgan Chase for which RJ had no authorization or control, including personal accounts and business accounts for KRITZA's companies: Stratosphere Management, LLC; Stratosphere Group, LLC;  Stratosphere Fuel Consortium, LLC;  Eco Aluminum Pallets, LLC; Eco Aluminum, LLC; Eco Tracking, LLC; and Eco Containers, LLC.

18.     Alliance Bank, a subsidiary of Western Alliance Bank, is a federally insured institution.

### The Scheme to Defraud

19.     Beginning on or before 2004, and continuing through on or about 2013, KRITZA devised a scheme and artifice to fraudulently obtain RJ's funds for KRITZA's personal use without authorization.

20.     On or about October, 2005, KRITZA forged a Power of Attorney fraudulently representing that he had authorization to act on RJ's behalf.

21.     KRITZA knowingly, and with the intent to defraud, submitted the fraudulent Power of Attorney to Alliance Bank to initiate and renew lines of credit and a business loan

in RJ's name and to make unauthorized transfers of funds from RJ's bank accounts to KRITZA's bank accounts for his personal use.

22.     Between September 21, 2005, and continuing through September 27, 2013, KRITZA withdrew approximately $3,124,683 in fraudulent advances on the fraudulent lines of credit and business loan to steal the funds and also to make payments on the lines of credit to further his scheme and to avoid detection.

23.     On October 21, 2005, shortly after KRITZA submitted the fraudulent Power of Attorney to Alliance Bank and obtained the first of many fraudulent advances, KRITZA opened Alliance Bank account number ending in 5451 for his company Stratosphere Management.  KRITZA was the sole owner of Stratosphere Management and the sole signer on this account.

24.     On October 4, 2011, KRITZA opened Alliance Bank account number ending in 1497 for Stratosphere Group, LLC ("Stratosphere Group"), owned by KRITZA and his wife.  KRITZA and his wife were the signors on this account.  RJ had no ownership interest in Stratosphere Group.

25.     On April 15, 2011, KRITZA opened Alliance Bank account ending in 5297 under the name of his company Stratosphere Marketing, LLC.  Although RJ and KRITZA were both signors on this account, RJ had no ownership interest in Stratosphere Marketing, LLC.

26.     In order to further execute his scheme to defraud and to gain control of RJ's funds, from on or about January 2, 2009, through on or about October 3, 2013, KRITZA

used three of his Alliance Bank accounts, Stratosphere Management account ending in 5451, Stratosphere Group account ending in 1497, and Stratosphere Marketing account ending in 5297, to funnel approximately $8,673,305 from RJ's accounts.

27.     KRITZA commingled the $8,673,305 in RJ's funds, described above in paragraph 26, with other deposits in the above three accounts ending in 5451, 1497, and 5297. The funds from these three accounts were further distributed by KRITZA to many of his bank accounts described in paragraph 17.  KRITZA also used portions of these funds to make payments on the fraudulent bank loan and lines of credit and to pay his personal expenses. KRITZA further transferred approximately $152,199 back to RJ's accounts.

28.     KRITZA was only authorized to distribute RJ's funds into accounts that benefitted RJ and to use the funds to pay RJ's bills, including KRITZA's salary.

29.     KRITZA was not authorized to transfer millions of dollars of RJ's money in and out of accounts controlled by KRITZA.

30.     The total amount of unauthorized transfers of RJ's funds to KRITZA's accounts is approximately $6,992,205.

### Execution of The Scheme to Defraud
### The Originating Line of Credit, LOC 4825

31.     On October 5, 2004, based in part on KRITZA's advice, RJ obtained a $500,000 "Consumer Revolving Line of Credit" from Alliance Bank, account number ending in 4825 ("LOC 4825").  The line of credit matured on October 5, 2005, one year from its initiation.  RJ, TE, KRITZA, and RJ's financial adviser ML were all authorized signors on LOC 4825.

32.     Around the Spring of 2005, RJ had borrowed and repaid money from LOC 4825, bringing the balance to zero dollars.

33.     After RJ repaid LOC 4825, KRITZA asked RJ if he (KRITZA) could borrow money against the LOC before it expired on October 5, 2005.

34.     KRITZA told RJ that he wanted to use the funds from LOC 4825 to pursue various business ventures.

35.     KRITZA assured RJ that he would repay all the money that he borrowed from LOC 4825 and that he would use his home as collateral against the funds borrowed on the line of credit.

36.     KRITZA did not use his home as collateral against the funds he borrowed under LOC 4825.

37.     In approximately Spring, 2005, RJ orally gave KRITZA permission to access LOC 4825 until it matured in October, 2005.

38.     RJ did not require KRITZA to sign a promissory note or record a lien against

KRITZA's home.

39.     RJ never gave KRITZA oral or written instructions for KRITZA's use of LOC 4825.

40.     RJ believed that because he and KRITZA were not only business associates but also friends, that KRITZA would access LOC 4825 and then wholly repay the line of credit as KRITZA had promised.

41.     Moreover, RJ believed that if KRITZA failed to repay LOC 4825 that the most money that RJ could be responsible for was the line of credit maximum amount of $500,000.

42.     KRITZA, who had access to all of RJ's bank accounts, began accessing LOC 4825 shortly thereafter.

43.     By September, 2005, KRITZA had increased the balance on LOC 4825 to $417,000.

44.     Instead of repaying the line of credit as promised, KRITZA fraudulently renewed LOC 4825 in RJ's name without his knowledge or authority in order to keep borrowing against the LOC.

45.     Because RJ was never contacted by KRITZA or Alliance Bank about LOC 4825, RJ believed that KRITZA had paid off any money that KRITZA had borrowed and that LOC 4825 had lapsed.

### The Forged Power of Attorney

46.     In October, 2005, approximately the same time that LOC 4825 matured, Alliance Bank requested that KRITZA provide proof that KRITZA had legal authority to perform financial transactions on RJ's behalf.

47.     At the time KRITZA was seeking to renew LOC 4825, Alliance Bank was in possession of the 2001 Power of Attorney which granted TE, but not KRITZA, authority on RJ's behalf.  In October, 2005, KRITZA faxed Alliance Bank a Durable Power of Attorney for Financial Management in order to help facilitate the renewal of LOC 4825.

48.     KRITZA fraudulently created a "Durable Power of Attorney for Financial Management," dated August 2003 (hereinafter the "2003 Power of Attorney"), by forging the signatures of both RJ and CH, a former employee of TE's at Stratosphere Sports.  The 2003 Power of Attorney named both KRITZA and TE as RJ's attorneys-in-fact and stated that both KRITZA and TE had broad authority to conduct financial transactions on RJ's behalf.

49.     RJ and CH never authorized the 2003 Power of Attorney.

50.     On or about October 24, 2005, KRITZA, knowingly, and with intent to defraud, faxed the fraudulent 2003 Power of Attorney to Alliance Bank to obtain funds from Alliance Bank.

## The Fraudulent Lines of Credit and The Fraudulent Business Loan

51.     In September, 2005, beginning with LOC 4825, and continuing to January, 2013, KRITZA, initiated and renewed fraudulent lines of credit and a business loan in RJ's name by forging RJ's name on the bank documents listed below and knowingly submitting the documents to Alliance Bank in Tucson, Arizona, with the intent to defraud, as follows:

| Alliance Bank Line of Credit Number (Last Four Digits) | Initiation or Renewal Date | Transaction | Fraudulent Documents Provided to Alliance Bank by KRITZA |
|---|---|---|---|
| 4825 | 9/13/2005 | Renew line of credit number 4825 | -Consumer Revolving Line of Credit Change in Terms Agreement, -Alliance Bank of Arizona Privacy Policy, -Negative Information Disclosure, -Disbursement Request and Authorization |
| 4825 | 9/26/2006 | Renew line of credit number 4825 | -Consumer Revolving Line of Credit Change in Terms Agreement, -Disbursement Request and Authorization |
| 4825 | 8/13/2007 | Renew line of credit number 4825 | - Consumer Revolving Line of Credit Change in Terms Agreement, -Alliance Bank of Arizona Privacy Policy, -Negative Information Disclosure, -Disbursement Request and Authorization |

| Alliance Bank Line of Credit Number (Last Four Digits) | Initiation or Renewal Date | Transaction | Fraudulent Documents Provided to Alliance Bank by KRITZA |
|---|---|---|---|
| 4825 | 8/5/2008 | Renew line of credit number 4825 | - Consumer Revolving Line of Credit Change in Terms Agreement, -Alliance Bank of Arizona Privacy Policy, -Negative Information Disclosure, -Disbursement Request and Authorization |
| 4825 | 8/15/2009 | Renew line of credit number 4825 | - Consumer Revolving Line of Credit Change in Terms Agreement, -Alliance Bank of Arizona Privacy Policy, -Negative Information Disclosure, -Disbursement Request and Authorization |
| 5289 | 8/16/2010 | Initiate line of credit number 5289 | -Consumer Revolving Line of Credit, Asset Protection Trust or Irrevocable Trust Declaration, -Negative Information Disclosure, -Disbursement Request and Authorization |
| 5289 | 8/15/2011 | Renew line of credit number 5289 | -Credit Agreement and Disclosure, -Disbursement Request and Authorization |

| Alliance Bank Line of Credit Number (Last Four Digits) | Initiation or Renewal Date | Transaction | Fraudulent Documents Provided to Alliance Bank by KRITZA |
|---|---|---|---|
| 9169 | 12/23/2011 | Initiate business loan number 9169 | -Business Loan Application, -Promissory Note, Business Loan Agreement, -Disbursement Request and Authorization |
| 9169 | 11/15/2012 | Renew business loan number 9169 | -Change in Terms Agreement, -Disbursement Request and Authorization |
| 9169 | 1/15/2013 | Renew business loan number 9169 | -Change in Terms Agreement, -Disbursement Request and Authorization |
| 9169 | 2/23/2013 | Renew Business Loan number 9169 | -Business Loan Application -Personal Financial Statement |

52.    In order to initiate the lines of credit and bank loan or to renew them, KRITZA forged RJ's name on the Alliance Bank documents listed above in paragraph 51 (collectively "bank documents") with the intent to defraud so that KRITZA could obtain funds from Alliance Bank under RJ's name without his authorization.

53.     In furtherance of his fraud scheme, KRITZA also provided Alliance Bank with a Personal Financial Statement dated February 23, 2013, which included RJs name, date of birth, and social security number.

54.     RJ never authorized KRITZA to initiate or renew any of the lines of credit or the business loan described in paragraph 51. RJ was also completely unaware of any such transactions with the bank.

55.     KRITZA was the only person that communicated with Alliance Bank employees regarding the initiation and renewal of the lines of credit and the business loan described in paragraph 51.

56.     KRITZA, knowingly and with the intent to fraudulently obtain funds from Alliance Bank, provided the bank with all the forged and fraudulent bank documents listed in paragraph 51.

57.     KRITZA conducted transactions involving LOC 4825, LOC 5289, and BL 9169, by emailing instructions to Alliance Bank employees SW, ES, or GM, in Tucson, Arizona, or by placing phone calls to one of these employees.

## Line of Credit Renewal, LOC 4825

58.     Over the course of several years, KRITZA initiated at least eighty-five (85) transactions on LOC 4825.

59.     RJ never initiated any transactions using LOC 4825 after he repaid it in the spring of 2005.

60.     Between September, 2005, and September, 2010, KRITZA initiated 19 advances against LOC 4825 totaling $1,084,683, as follows:

| Date | Transaction | Amount | Originating Account (Last Four Digits) | Receiving Account (Last Four Digits) |
|---|---|---|---|---|
| 9/21/2005 | Advance | $15,000 | LOC 4825 | RJ Charles Schwab 3766 |
| 9/28/2005 | Advance | $6,000 | LOC 4825 | RJ 0230 |
| 9/28/2005 | Advance | $14,000 | LOC 4825 | PG Bank of America |
| 9/29/2005 | Advance | $18,000 | LOC 4825 | Stratosphere Sports LLC 1st National Bank of Arizona |
| 9/29/2005 | Advance | $42,000 | LOC 4825 | RJ 0230 |
| 11/8/2005 | Advance | $20,000 | LOC 4825 | Unknown |
| 11/9/2005 | Advance | $6,000 | LOC 4825 | Unknown |
| 12/7/2005 | Advance | $20,000 | LOC 4825 | Unknown |
| 7/18/2006 | Advance | $10,000 | LOC 4825 | Unknown |
| 8/16/2006 | Advance | $7,683 | LOC 4825 | Unknown |
| 4/25/2007 | Advance | $30,000 | LOC 4825 | RJ 2220 |
| 6/14/2007 | Advance | $10,000 | LOC 4825 | Unknown |
| 7/2/2007 | Advance | $7,000 | LOC 4825 | Unknown |
| 7/20/2009 | Advance | $100,000 | LOC 4825 | RJ 0230 |
| 8/6/2009 | Advance | $175,000 | LOC 4825 | RJ 0230 |
| 9/17/2009 | Advance | $50,000 | LOC 4825 | RJ 0230 |
| 10/1/2009 | Advance | $54,000 | LOC 4825 | RJ 0230 |
| 7/9/2010 | Advance | $200,000 | LOC 4825 | RJ 0230 |
| 8/24/2010 | Advance | $300,000 | LOC 4825 | RJ 0230 |
| Total | | $1,084,683 | | |
| | | | | |
| 9/15/2010 | Loan Payoff | ($500,000) | Loan 5289 | LOC 4825 |

61.     KRITZA deposited a total of $957,000 in LOC 4825 advances into RJ's Alliance Bank accounts: $927,000 was deposited into RJs checking account number ending in 0230, and $30,000 was deposited into RJs business checking account number ending in 2220.   These funds were later distributed among Alliance Bank accounts controlled by KRITZA, account numbers ending in 5451, 1497, and 5297.   These funds were further distributed among many of KRITZA's bank accounts described in paragraph 17.   These funds were also used by KRITZA to make payments on the fraudulent lines of credit, the fraudulent bank loan, KRITZA's personal expenses, and to make small distributions back to RJ's accounts.

62.     Between September, 2005, and September, 2010, KRITZA made sixty-six (66) payments totaling over $1,100,000 to LOC 4825.   Most of this amount was paid between January, 2009, and September, 2010, when KRITZA transferred approximately $900,000 directly from RJ's Alliance Bank accounts ending in 0230 and 2220 to LOC 4825.

63.     In order to further his scheme and to avoid detection, on September 15, 2010, KRITZA made the final payment to LOC 4825 with funds from a new line of credit that KRITZA fraudulently obtained in RJ's name, Alliance Bank line of credit account number ending in 5289 (LOC 5289).

## Line of Credit, LOC 5289

64.     Between September, 2010, and December, 2011, KRITZA took eight (8) advances against LOC 5289 totaling $1,395,000, as follows:

| Date | Transaction | Amount | Originating Account (Last Four Digits) | Receiving Account (Last Four Digits) |
|------|-------------|--------|----------------------------------------|--------------------------------------|
| 9/15/2010 | Advance | $500,000 | LOC 5289 | LOC 4825 |
| 1/3/2011 | Advance | $400,000 | LOC 5289 | RJ 0230 |
| 8/15/2011 | Advance | $100,000 | LOC 5289 | RJ 0230 |
| 9/1/2011 | Advance | $60,000 | LOC 5289 | RJ 0230 |
| 9/9/2011 | Advance | $100,000 | LOC 5289 | RJ 0230 |
| 9/19/2011 | Advance | $100,000 | LOC 5289 | RJ 0230 |
| 10/21/2011 | Advance | $100,000 | LOC 5289 | Stratosphere Management 5451 |
| 11/10/2011 | Advance | $35,000 | LOC 5289 | RJ 0230 |
| Total | | $1,395,000 | | |

65.     KRITZA deposited a total of $795,000 in LOC 5289 advances into RJ's Alliance Bank checking account 0230, with funds from this account distributed among Alliance Bank accounts controlled by KRITZA, account numbers ending in 5451, 1497 and/or 5297.   These funds were further distributed among many of KRITZA's bank accounts described in paragraph 17, to make payments on the fraudulent lines of credit, the fraudulent bank loan, KRITZA's personal expenses, and to make small distributions back to RJ's accounts.

66.     Between October, 2010, and December, 2011, KRITZA made sixteen (16) loan payments to LOC 5289 totaling approximately $918,000.  Fifteen (15) of the sixteen (16) payments, totaling $915,000, originated from RJ's Alliance Bank checking account 0230.

67.     On December 23, 2011, KRITZA initiated Alliance Bank business loan account number ending in 9169 (BL 9169).

68.     In order to further his scheme to defraud and to avoid detection, KRITZA used the first draw of BL 9169 in the amount of $495,000 to pay LOC 5289, bringing the balance on LOC 5289 nearly current.

69.     On December 30, 2011, KRITZA made the last $3,380 payment to LOC 5289 from KRITZA's Stratosphere Management account number ending in 5451.

70.     The previous day, December 29, 2011, KRITZA transferred $20,000 from RJ's money market account number ending in 2972, into KRITZA's Stratosphere Management account number ending in 5451.

**Business Loan Number 9169**

71.     Between December 23, 2011, and September 27, 2013, KRITZA initiated five advances from LOC 9169, totaling $645,000, as follows:

| Date | Transaction | Amount | Originating Account (Last Four Digits) | Receiving Account (Last Four Digits) |
|---|---|---|---|---|
| 12/23/2011 | Advance | $495,000 | Loan 9169 | LOC 5289 |
| 10/1/2012 | Advance | $25,000 | Loan 9169 | RJ 2972 |
| 10/15/2012 | Advance | $60,000 | Loan 9169 | RJ 4655 |
| 11/1/2012 | Advance | $35,000 | Loan 9169 | RJ 4655 |
| 9/27/2013 | Advance | $30,000 | Loan 9169 | RJ 4655 |
| Total | | $645,000 | | |

72.     After the funds from BL 9169 were deposited into RJ's Alliance Bank accounts ending in 2972 and 4655, the funds were further disbursed to two Alliance Bank accounts KRITZA controlled, Stratosphere Management account 5451, and Stratosphere Group account 1497.

73.     Between January, 2012, and October, 2013, KRITZA made Twenty-Five (25) payments to BL 9169 totaling approximately $200,000 from accounts that KRITZA controlled at Alliance Bank: Stratosphere Group account number ending in 1497, Stratosphere Management account number ending in 5451, and Eco Aluminum account number ending in 1200.

74.     During that same time period, between January, 2012, and October, 2013, KRITZA transferred over $2,300,000 from RJ's Alliance Bank accounts (account numbers ending in 0230, 2792, 2220, 4655) into the same two accounts used to make the $200,000

payment described above, that is, KRITZA's Stratosphere Group and Stratosphere Management account numbers ending 1497 and 5451, respectively.

### KRITZA Continued to Access Funds Under BL 9169 After Discovery of the Fraud

75.    In the fall of 2012, while purchasing a home, RJ learned that there was an outstanding loan under his name at Alliance Bank, BL 9169.  RJ also learned that KRITZA had renewed and initiated several loans in RJ's name without RJ's authorization.

76.    On October 9, 2012, RJ, though an attorney, signed a revocation of all Powers of Attorney for TE and KRITZA.

77.    The revocation of the Powers of Attorney were mailed to TE and KRITZA on October 11, 2012.

78.    The revocation of the Powers of Attorney stated that KRITZA was "not authorized to transact business or represent the interests of [RJ] without [RJ's]express advance written permission." The revocation was signed by RJ and his signature was notarized.

79.    Beginning on October 15, 2012, and continuing through September 27, 2013, KRITZA initiated advances against BL 9169 totaling $125,000, as described in paragraph 71. These advances were also initiated by KRITZA without RJ's authorization.

80.    In October, 2013, RJ froze BL 9169.  At the time, there was an outstanding balance of approximately $497,000.

## KRITZA'S Unauthorized Transfers from RJ's Alliance Bank Accounts

81.     One of KRITZA's legitimate duties was to transfer RJ's funds from RJ's Alliance Bank checking account 0230, into RJ's other savings and investment accounts, including:  RJ's Alliance Bank account numbers ending in 2220, 2972, and 4655.

82.     On or about the dates set forth below, KRTIZA knowingly, intentionally, and fraudulently used his access to the bank accounts listed above in paragraph 13 to transfer RJ's funds to the three Alliance Bank account numbers ending in 5451, 1497, and 5297, as described in paragraphs 23 through 26, and as follows:

| Date Range | Funds Transferred From RJ's Alliance Bank Accounts (Last Four Digits): | Funds Transferred To KRITZA (Last Four Digits): |
|---|---|---|
| 1/2/2009 to 10/3/2013 | Account 0230:  $3,340,000<br><br>Account 2972:  $1,951,000<br><br>Account 2220:    $914,500<br><br>Account 4655:      $66,000 | Account 5451: $6,271,500 (Stratosphere Management) |
| 12/1/2011 To 9/3/2013 | Account 4655: $1,799,055<br><br>Account 2220:    $146,500<br><br>Account 0230:      $81,500<br><br>Account 2972:      $73,750 | Account 1497: $2,100,805 (Stratosphere Group) |

| Date Range | Funds Transferred From RJ's Alliance Bank Accounts (Last Four Digits): | Funds Transferred To KRITZA (Last Four Digits): |
|---|---|---|
| 9/29/2011 to 4/2/2012 | Account 4655:    $260,000<br><br>Account 0230:    $25,000<br><br>Account 2972:    $16,000 | Account 5297:    $301,000 (Stratosphere Marketing) |
| **Total** | | **$8,673,305** |

83.    The $8,673,305 in RJ's funds, described above in paragraph 82, were commingled with other deposits in Alliance Bank accounts controlled by KRITZA, account numbers ending in 5451, 1497, and 5297. The funds from these three accounts were distributed to many of the bank accounts which KRITZA opened and controlled, as described in paragraph 17. These funds were also used to pay the fraudulent lines of credit, fraudulent bank loan, and KRITZA's personal expenses.

84.    From on or about January 1, 2009, through on or about October 31, 2013, funds from RJ's Alliance Bank account numbers ending in 0230, 2220, 2972, and 4655, were transferred to the Stratosphere Management Alliance Bank account number ending in 5451 and used to pay charges totaling approximately $25,056 for an American Express Business Card in the name of KRITZA's Spouse. Approximately $20,195 of these payments were funded solely by transfers from RJ's bank accounts. The remaining $4,861

was funded partially by transfers from RJ's accounts and by other funds not associated with RJ.

85.     From on or about January 1, 2009, to October 31, 2013, funds from RJ's Alliance Bank account numbers ending in 0230, 2220, 2972, and 4655 were transferred to the Stratosphere Management Alliance Bank account ending 5451 and the Stratosphere Group Alliance Bank account ending in 1497.  These funds were used to make payments totaling approximately $1,577,738 for American Express Platinum Cards in the names of Theodore KRITZA and KRITZA's spouse.  Approximately $980,841 of these payments were funded solely by transfers from RJ's bank accounts.  The remaining $596,897 was funded partially by transfers from RJ's accounts and by other funds not associated with RJ.

<u>**Counts 1 - 9**</u>
<u>**Bank Fraud**</u>
**(18 U.S.C. § 1344(2))**

86.     The Factual Allegations in Paragraphs 1 through 85 are re-alleged and incorporated as to Counts 1 through 9 as if set forth in full herein.

87.     Beginning on or about the dates set forth below, at or near Tucson, Arizona, within the District of Arizona, Defendant, THEODORE KRITZA, with the intent to defraud, did knowingly execute a scheme and artifice to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of Alliance Bank, a federally insured financial institution, by means of false and fraudulent pretenses, representations, and promises, by knowingly submitting documents containing materially false and fraudulent statements to originate or renew Alliance Bank lines of

credit and a business loan under RJ's name and without RJ's authorization so that Defendant KRITZA could obtain funds for his personal use, as described below:

| Count | Alliance Bank Line of Credit Number (Last Four Digits) | Initiation or Renewal Date | Transaction (Last Four Digits of Account) | Fraudulent Documents Provided to Alliance Bank by KRITZA |
|---|---|---|---|---|
| 1 | 4825 | 8/13/2007 | Renew line of credit number 4825 | - Consumer Revolving Line of Credit Change in Terms Agreement, -Alliance Bank of Arizona Privacy Policy, -Negative Information Disclosure, -Disbursement Request and Authorization |
| 2 | 4825 | 8/5/2008 | Renew line of credit number 4825 | - Consumer Revolving Line of Credit Change in Terms Agreement, -Alliance Bank of Arizona Privacy Policy, -Negative Information Disclosure, -Disbursement Request and Authorization |
| 3 | 4825 | 8/15/2009 | Renew line of credit number 4825 | - Consumer Revolving Line of Credit Change in Terms Agreement, -Alliance Bank of Arizona Privacy Policy, -Negative Information Disclosure, -Disbursement Request and Authorization |

| Count | Alliance Bank Line of Credit Number (Last Four Digits) | Initiation or Renewal Date | Transaction (Last Four Digits of Account) | Fraudulent Documents Provided to Alliance Bank by KRITZA |
|---|---|---|---|---|
| 4 | 5289 | 8/16/2010 | Initiate line of credit number 5289 | -Consumer Revolving Line of Credit, Asset Protection Trust or Irrevocable Trust Declaration, -Negative Information Disclosure, -Disbursement Request and Authorization |
| 5 | 5289 | 8/15/2011 | Renew line of credit number 5289 | -Credit Agreement and Disclosure, -Disbursement Request and Authorization |
| 6 | 9169 | 12/23/2011 | Initiate business loan number 9169 | -Business Loan Application, -Promissory Note, Business Loan Agreement, -Disbursement Request and Authorization |
| 7 | 9169 | 11/15/2012 | Renew business loan number 9169 | -Change in Terms Agreement, -Disbursement Request and Authorization |
| 8 | 9169 | 1/15/2013 | Renew business loan number 9169 | -Change in Terms Agreement, -Disbursement Request and Authorization |

| Count | Alliance Bank Line of Credit Number (Last Four Digits) | Initiation or Renewal Date | Transaction (Last Four Digits of Account) | Fraudulent Documents Provided to Alliance Bank by KRITZA |
|---|---|---|---|---|
| 9 | 9169 | 2/23/2013 | Renew business loan number 9169 | -Business Loan Application<br>- Personal Financial Statement |

All in violation of Title 18 U.S.C. §1344(2).

**Counts 10 – 19**
**18 U.S.C. §1343**
**(Wire Fraud)**

88.     The Factual Allegations in Paragraphs 1 through 85 are re-alleged and incorporated as to Counts 10 through 19 as if set forth in full herein.

**The Scheme to Defraud**

89.     Beginning on or about the dates set forth below, at or near Tucson, Arizona, within the District of Arizona, and elsewhere, Defendant, THEODORE KRITZA, with the intent to defraud, knowingly and willfully devised and intended to devise a scheme to defraud RJ to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and with the intentional concealment of material facts, by knowingly submitting documents containing materially false and fraudulent statements to Alliance Bank so that Defendant KRITZA could obtain funds from RJs

Alliance Bank accounts and funds from fraudulent lines of credit and a fraudulent bank loan using RJ's name, all without RJ's authorization.

## Execution of The Scheme by Wire Communication

90.     On or about the dates listed below, within the District of Arizona, and elsewhere, Defendant KRITZA, for the purpose of and as an essential part of executing the scheme to defraud, described in Paragraphs 19 through 85 and 89 above, transmitted and knowingly caused to be transmitted by means of wire communication in interstate commerce writings, signals, and sounds, that is, emails from KRITZA's gmail account to Alliance Bank employee ES at Alliance Bank in Tucson, Arizona, instructing ES and other Alliance Bank employees to transfer funds from the accounts specified below to pay principal and interest on the fraudulent lines of credit and bank loan, described in paragraph 51, so that KRITZA could avoid detection and continue to obtain funds through these same fraudulent lines of credit and bank loan, all without authorization as follows:

| Count | Date | Transaction Instructions from KRITZA to Alliance Bank |
|-------|------|-------------------------------------------------------|
| 10 | 11/9/2010 | Email to transfer $300,000 from RJ's personal checking account ending in 0230 to LOC 5289 |
| 11 | 12/15/2010 | Email to transfer $100,000 from RJ's personal checking account ending in 0230 to LOC 5289 |
| 12 | 1/31/2011 | Email to transfer $200,000 from RJ's personal checking account ending in 0230 to LOC 5289 |
| 13 | 2/15/2011 | Email to transfer $100,000 from RJ's personal checking account ending in 0230 to LOC 5289 |
| 14 | 3/16/2011 | Email to transfer $100,000 from RJ's personal checking account ending in 0230 to LOC 5289 |

| Count | Date | Transaction Instructions from KRITZA to Alliance Bank |
|---|---|---|
| 15 | 6/14/2012 | Email to transfer $2,210.90 from KRITZA's Stratosphere Group account ending in 1497 to BL 9169 |
| 16 | 8/13/2012 | Email to transfer $1,931.03 from KRITZA's Stratosphere Group account ending in 1497 to BL 9169 |
| 17 | 3/11/2013 | Email to transfer $2,350.83 from KRITZA's Stratosphere Group account ending in 1497 to BL 9169 |
| 18 | 4/10/2013 | Email to transfer $2,602.71 from KRITZA's Stratosphere Group account ending in 1497 to BL 9169 |
| 19 | 7/24/2013 | Email to transfer $2,518.75 from KRITZA's Stratosphere Management account ending in 5451 to BL 9169 |

All in violation of Title 18 U.S.C. § 1343.

**Counts 20 - 22**
**Aggravated identity Theft**
**(18 U.S.C. § 1028A)**

91.     The Factual Allegations in Paragraphs 1 through 85 are re-alleged and incorporated as to Counts 20 through 22 as if set forth in full herein.

92.     On or about the dates specified below, in the District of Arizona and elsewhere, each instance being a separate count of this indictment, Defendant THEODORE KRITZA did knowingly transfer, possess, or use, without lawful authority, a means of identification of another person during and in relation to a felony violation of Bank Fraud, in violation of Title 18 U.S.C. § 1344(2), as charged in Counts 7 through 9 of this Indictment, knowing the means of identification belonged to another actual person, as follows:

| Count | Loan Number (Last Four Digits) | Date | Transaction/Document | Personal Identifying Information Provided to Bank |
|---|---|---|---|---|
| 20 | 9169 | 11/15/2012 | -Change in Terms Agreement, -Disbursement Request and Authorization | RJ's Name |
| 21 | 9169 | 1/15/2013 | -Change in Terms Agreement, -Disbursement Request and Authorization | RJ's Name |
| 22 | 9169 | 2/23/2013 | -Business Loan Application - Personal Financial Statement | RJ's Name, Social Security Number ending in 0423, Date of Birth |

All in Violation of 18 U.S.C. §1028(A)(a)(1) and 1028A(b)(2).

## FORFEITURE ALLEGATION

Upon conviction of the offenses in violation of Title 18, United States Code, Section 1344 set forth in Counts One through Nine of this Indictment, Defendant, THEODORE KRITZA, shall forfeit to the United States pursuant to Title 18, United States Code, Section 982(a)(2)(A), all right, title, and interest in any property constituting, or derived from, proceeds the person obtained, directly or indirectly, as the result of the said violations. The property to be forfeited includes, but is not limited to a sum of money equal to the amount of proceeds obtained as a result of the offenses, which amount is at least $3,831,778, together with any interest accrued thereon for outstanding accounts.

Upon conviction of the offenses in violation of Title 18, United States Code, Section 1343 set forth in Counts Ten through Nineteen of this Indictment, the Defendant, THEODORE KRITZA, shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 982(a)(2)(A), any property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of such violations. The property to be forfeited includes, but is not limited to a sum of money equal to the amount of proceeds obtained as a result of the offenses, which amount is at least $6,992,205.

Upon conviction of the offenses in violation of Title 18, United States Code, Section 1028 set forth in Counts Twenty through Twenty-Two of this Indictment, Defendant, THEODORE KRITZA, shall forfeit to the United States:

(A)     pursuant to Title 18, United States Code, Section 982(a)(2)(B), all right, title, and interest in any property constituting, or derived from, proceeds the person obtained, directly or indirectly, as the result of the said violations; and

(B)     pursuant to Title 18, United States Code, Section 1028(b)(5), all right, title and interest in any personal property used, or intended to be used, to commit said violations.

The property to be forfeited includes, but is not limited to a sum of money equal to the amount of proceeds obtained as a result of the offenses.

If any of the forfeitable property, as a result of any act or omission of the Defendant: (1) cannot be located upon the exercise of due diligence; (2) has been transferred or sold to, or deposited with, a third party; (3) has been placed beyond the jurisdiction of the court; (4) has been substantially diminished in value; or (5) has been commingled with other

property which cannot be divided without difficulty; it is the intent of the United States to seek forfeiture of any other property of said defendant up to the value of the above-described forfeitable property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Sections 982(b)(1), 1028(g), and Title 28, United States Code, Section 2461(c).

All pursuant to Title 18, United States Code, Sections 982(a)(2)(A), 982(a)(2)(B), 1028(b)(5), and Title 28, United States Code, Section 2461(c).

A TRUE BILL

/s
FOREPERSON OF THE GRAND JURY
Date:

ELIZABETH A. STRANGE
Acting United States Attorney
District of Arizona

/s Sandra M. Hansen
Sandra M. Hansen
Assistant U.S. Attorney

Date:

JUN 1 4 2017