GLENN B. McCORMICK
Acting United States Attorney
District of Arizona
Sandra M. Hansen
Arizona State Bar No. 009471
Jane L. Westby
Arizona State Bar No. 017550
Assistant U.S. Attorney
U.S. Attorney's Office
405 W. Congress Street, Suite 4800
Tucson, Arizona 85701
Telephone: 520-620-7300
Email: Sandra.Hansen@usdoj.gov
Email: Jane.Westby@usdoj.gov
Attorneys for Plaintiff

☒ FILED   ☐ LODGED

**MAY 3 2021**

CLERK U.S. DISTRICT COURT
DISTRICT OF ARIZONA

By: S.G. Fuller-Courtroom deputy

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Theodore Kritza,<br><br>Defendant. | 4:17-CR-938-TUC-CKJ(EJM)<br><br>PLEA AGREEMENT |

The United States of America and Defendant Theodore Kritza ("Defendant") agree to the following disposition of this matter:

PLEA

1.    Defendant agrees to plead guilty to Counts 7 and 15 of the Indictment charging him with felony violations of: Title 18, United States Code, Section 1344(2), Bank Fraud and, Title 18, United States Code, Section 1343, Wire Fraud.

U.S. v. Kritza
4:17-CR-938-TUC-CKJ (EJM)
4/29/21
Page 1

1

## ELEMENTS OF THE OFFENSES

2

3      2.      Defendant is charged in Count 7 of the Indictment with Bank Fraud, in

4  violation of Title 18, U.S.C. § 1344(2).  In order to prove Bank Fraud, the government

5
   must prove each of the following elements beyond a reasonable doubt:

6
7          First, the Defendant knowingly carried out a scheme or plan to obtain money
           or property from Alliance Bank of Arizona by making false statements or
8          promises;

9          Second, the Defendant knew that the statements or promises were false;

10
11         Third, the statements or promises were material; that is, they had a natural
           tendency to influence, or were capable of influencing, a financial institution
12         to part with money or property;

13         Fourth, the Defendant acted with the intent to defraud; and

14
           Fifth, Alliance Bank is a federally insured institution.
15

16      3.      The Defendant is charged in Count 15 of the Indictment with Wire Fraud, in

17  violation of Title 18, U.S.C. § 1343.  In order to prove Wire Fraud, the government must

18
   prove each of the following elements beyond a reasonable doubt:
19

20         First, the Defendant knowingly devised a scheme or plan to defraud, or a
           scheme or plan for obtaining money or property by means of false or
21         fraudulent pretenses, representations, or promises;

22
           Second, the statements made or facts omitted as part of the scheme were
23         material; that is, they had a natural tendency to influence, or were capable of
           influencing, a person to part with money or property;
24

25         Third, the Defendant acted with the intent to defraud, that is, the intent to
26         deceive or cheat; and

27

28  U.S. v. Kritza
    4:17-CR-938-TUC-CKJ (EJM)
    4/29/21
    Page 2

Fourth, the Defendant used, or caused to be used, a wire communication to carry out or attempt to carry out an essential part of the scheme.

TERMS

4.     The Defendant understands that this guilty plea is conditioned upon the following terms, stipulations, and requirements.

Maximum Penalties

5.     The Defendant understands that the maximum penalty for Count 7 of the Indictment, Bank Fraud, in violation of Title 18, United States Code, § 1344(2), is a fine of up to $1,000,000.00, a term of not more than thirty (30) years imprisonment, or both, and a period of not more than five (5) years supervised release.

6.     The Defendant understands that the maximum penalty for Count 15 of the Indictment, Wire Fraud, in violation of Title 18, United States Code, § 1343, is a fine of up to $250,000.00, a term of not more than twenty (20) years imprisonment, or both, and a period of not more than three (3) years supervised release.

7.     Pursuant to the United States Sentencing Guidelines ("Guidelines") issued pursuant to the Sentencing Reform Act of 1984, the Court shall:

(a)     order Defendant to pay a fine, which may include the costs of probation, supervised release or incarceration, unless, pursuant to Title 18, United States Code, Section 3611 and Section 5E1.2(f) of the Guidelines, Defendant establishes the applicability of the exceptions found therein;

U.S. v. Kritza
4:17-CR-938-TUC-CKJ (EJM)
4/29/21
Page 3

(b)      order Defendant to make restitution to any victim of the offense unless, pursuant to Title 18, United States Code, Section 3663 and Section 5E1.1 of the Guidelines, the court determines that restitution would not be appropriate in this case.

8.      Pursuant to Title 18, United States Code, Section 3013, the court is required to impose a special assessment on the Defendant of $100.00 for each count for a total of $200.00.  The special assessment is due at the time Defendant enters the plea of guilty, but in no event shall it be paid later than the time of sentencing.

Agreements Regarding Sentencing

**Counts 7 and 15**

9.      The government and Defendant stipulate and agree that the total offense level in the U.S. Sentencing Guidelines for Counts 7 and 10 is calculated as follows:

| | |
|---|---|
| Base Offense Level (§ 2B1.1(a)(1)) | 7 |
| Specific Offense Characteristic (§ 2B1.1(b)(1)(J)) | 18 |
| Sophisticated means (2B1.1§ (b)(10)) | 2 |
| Abuse of Trust (§ 3B1.3) | 2 |
| Acceptance of Responsibility (§ 3E1.1) | -3 |
| Total Offense Level | 26 |

10.      Pursuant to Rule 11(c)(1)(C), Fed. R. Crim. P., and based on an Offense Level of 26, the Defendant and the government stipulate and agree to a sentencing range of 0 to 70 months imprisonment for Counts 7 and 15.

U.S. v. Kritza
4:17-CR-938-TUC-CKJ (EJM)
4/29/21
Page 4

11.     If Defendant seeks a variance under 18 U.S.C. § 3553(a) in support of a sentence within the stipulated range of 0 to 70 months imprisonment for Counts 7 and 15, the government may oppose the request, but it will not withdraw from this agreement based on Defendant's request for, or the court's grant of, a variance within the stipulated range of imprisonment of 0 to 70 months imprisonment.

12.     Defendant understands that the court is neither a party to nor bound by this agreement and the court has complete discretion to impose the maximum sentence possible for the crime to which Defendant has pled.  If the court imposes a sentence greater than the maximum term agreed upon by the parties or otherwise rejects the plea agreement, the Defendant may withdraw his guilty plea as authorized by Rule 11(d)(2)(A), Fed. R. Crim. P.  The Defendant understands that he may not withdraw from this plea agreement if the court accepts the agreement and sentences him to a term of 0 to 70 months imprisonment for Counts 7 and 15.

13.     This agreement is expressly conditioned upon Defendant's placement in Criminal History Category I of the advisory sentencing guidelines.  If the Defendant's criminal history category placement exceeds criminal history Category I, the government reserves the right to withdraw from the plea agreement.

14.     Pursuant to Fed.R.Crim.P. 11(c)(1)(C), provided the Defendant complies with the terms of this agreement, the government agrees to dismiss the remaining counts in the Indictment against Defendant at the time of the Defendant's sentencing and to not

bring further criminal charges against the Defendant for any conduct now known to the government related to the allegations in the Indictment.

15. The Defendant and the government agree that this agreement does not in any manner restrict the actions of the government in any other district or bind any other United States Attorney's Office.

Assets and Financial Responsibility

16. The Defendant shall (i) make a full accounting of all assets, including real and personal property in which the Defendant has any legal or equitable interest; (ii) permit the U.S. Attorney's office to immediately obtain the Defendant's credit reports in order to evaluate the Defendant's ability to satisfy any financial obligation that is or might be imposed by the court; (iii) make full disclosure of all current and projected assets to the U.S. Probation Office immediately and prior to the termination of the Defendant's supervised release or probation, such disclosures to be shared with the U.S. Attorney's Office, including the Financial Litigation Unit, for any purpose; (iv) cooperate fully with the government and the Probation Officer to execute such documentation as may be necessary to secure assets to be applied to restitution owed by the Defendant. The Defendant agrees to permit the Probation Officer to provide to the U.S. Attorney's office copies of any and all financial information provided by the Defendant to the U.S. Probation Office; and (v) not (and shall not aid and abet any other party to) sell, hide, waste, spend, destroy, transfer or otherwise devalue any such assets or property before sentencing,

U.S. v. Kritza
4:17-CR-938-TUC-CKJ (EJM)
4/29/21
Page 6

without the prior approval of the United States (provided, however, that no prior approval will be required for routine, day-to-day expenditures).

## Agreement as to Restitution

17.     Pursuant to Title 18 U.S.C. § 3663A, the Defendant specifically agrees to pay restitution to victim RJ in the amount of $4,794,874.41.  The Defendant understands and agrees that restitution will be included in the Court's Order of Judgment and that any unanticipated restitution amount will not serve as grounds to withdraw the Defendant's guilty plea or to withdraw from this plea agreement.

18.     Pursuant to 18 U.S.C. § 3163, all monetary penalties, including restitution imposed by the Court, shall be subject to immediate enforcement by the United States, and shall be submitted to the Treasury Offset Program so that any federal payment or transfer of returned property the defendant receives may be offset and applied to federal debts (which offset will not affect the periodic payment schedule). If the Court imposes a schedule of payments, the schedule of payments shall be merely a schedule of minimum payments and shall not limit the methods available to the United States to enforce the judgment, or preclude the United States from enforcing the full amount of the judgment by any means authorized by law.

U.S. v. Kritza
4:17-CR-938-TUC-CKJ (EJM)
4/29/21
Page 7

Breach of the Agreement.

19.     If Defendant fails to comply with any obligation or promise pursuant to this agreement, including the failure to appear at sentencing, the United States:

a.      may, in its sole discretion, declare any provision of this agreement null and void in accordance with paragraph (22) below and Defendant understands that Defendant shall not be permitted to withdraw the plea of guilty made in connection with this agreement;

b.      may prosecute Defendant for any offense known to the United States for which Defendant is responsible, and Defendant waives any statute of limitations, Speedy Trial Act, and constitutional restrictions for bringing charges after the execution of this agreement;

c.      may argue for a maximum statutory sentence for the offenses to which Defendant has pled guilty.

Plea Addendum

20.     This written plea agreement, and any written addenda filed as attachments to this plea agreement, contain all the terms and conditions of the plea.  Any additional agreements, if any such agreements exist, shall be recorded in a separate document and may be filed with the Court under seal.  Accordingly, additional agreements, if any, may not be in the public record.

U.S. v. Kritza
4:17-CR-938-TUC-CKJ (EJM)
4/29/21
Page 8

## Waiver of Defenses and Appeal Rights

21.     The Defendant waives any and all motions, defenses, probable cause determinations, and objections that the Defendant could assert to the information or indictment, or to the Court's entry of judgment against the Defendant and imposition of sentence upon the Defendant providing the sentence is consistent with this agreement. The sentence imposed is consistent with the terms of this agreement provided Defendant receives a sentence of 0 to 70 months imprisonment for Counts 7 and 15 of the Indictment. The Defendant further waives: (1) any right to appeal the Court's entry of judgment against Defendant; (2) any right to appeal the imposition of sentence upon Defendant under 18 U.S.C. § 3742 (sentence appeals); (3) any right to appeal the district court's refusal to grant a requested variance; (4) any right to collaterally attack Defendant's conviction and sentence under 28 U.S.C. § 2255, or any other collateral attack; and (5) any right to file a motion for modification of sentence, including under 18 U.S.C. § 3582(c). The Defendant acknowledges that this waiver shall result in the dismissal of any appeal or collateral attack the Defendant might file challenging his conviction or sentence in this case.   If the Defendant files a notice of appeal or a habeas petition, notwithstanding this agreement, Defendant agrees that this case shall, upon motion of the government, be remanded to the district court to determine whether Defendant is in breach of this agreement and, if so, to permit the government to withdraw from the plea agreement.  This waiver shall not be construed to bar a claim by the Defendant of ineffective assistance of counsel or of

"prosecutorial misconduct" (as that term is defined by Section II.B of Ariz. Ethics Op. 15-01 (2015)).

## Reinstitution of Prosecution

22.     If the Defendant's guilty plea is rejected, withdrawn, vacated, or reversed by any court in a later proceeding, the government will be free to prosecute the Defendant for all charges as to which it has knowledge, and any charges that have been dismissed because of this plea agreement will be automatically reinstated.  In such event, Defendant waives any objections, motions, or defenses based upon the Speedy Trial Act or the Sixth Amendment to the Constitution as to the delay occasioned by the later proceedings. Defendant understands that any statements made at the time of the change of plea or sentencing may be used against Defendant in any subsequent hearing, trial or proceeding as permitted by Fed.R.Crim.P. 11(f).

## Perjury and Other Offenses

23.     Nothing in this agreement shall be construed to protect the Defendant in any way from prosecution for perjury, false declaration or false statement, obstruction of justice, or any other offense committed by the Defendant after the date of this agreement.

U.S. v. Kritza
4:17-CR-938-TUC-CKJ (EJM)
4/29/21
Page 10

## Disclosure of Information to U.S. Probation Office

24.     Defendant understands the United States' obligation to provide all information in its file regarding Defendant to the United States Probation Department.

25.     Defendant will cooperate fully with the United States Probation Department. Such cooperation will include truthful statements in response to any questions posed by the Probation Department, including, but not limited to (1) all criminal history information, i.e., all criminal convictions as defined under the Sentencing Guidelines; (2) all financial information, e.g., present financial assets or liabilities that relate to the ability of Defendant to pay a fine or restitution; (3) all history of drug abuse which would warrant a treatment condition as part of sentencing; and (4) all history of mental illness or conditions which would warrant a treatment condition as a part of sentencing.

## Effect on Forfeiture Proceedings

26.     Nothing in this agreement shall be construed to protect the Defendant from civil forfeiture proceedings or prohibit the United States from proceeding with and/or initiating an action for civil forfeiture.

27.     Defendant will identify all assets and identify the source of income used to obtain the assets. Defendant will identify all assets used to facilitate the commission of any crime charged in this indictment. Defendant will testify truthfully in any civil forfeiture proceeding.

28.     Further, this agreement does not preclude the United States from instituting any civil proceedings as may be appropriate now or in the future.

U.S. v. Kritza
4:17-CR-938-TUC-CKJ (EJM)
4/29/21
Page 11

## WAIVER OF DEFENDANT'S RIGHTS AND FACTUAL BASIS

### Waiver of Rights

I have read each of the provisions of the entire plea agreement with the assistance of counsel and understand its provisions. I have discussed the case and my constitutional and other rights with my attorney. I understand that by entering my plea of guilty I will be giving up my rights as follows: to plead not guilty; to trial by jury; to confront, cross-examine, and compel the attendance of witnesses; to present evidence in my defense; to remain silent and refuse to be a witness against myself by asserting my privilege against self-incrimination; all with the assistance of counsel; to be presumed innocent until proven guilty beyond a reasonable doubt; to a restitution schedule set by the Court for payment of restitution during any period of incarceration; and, to appeal or file any other challenge to my conviction or sentence.

I agree to enter my guilty plea as indicated above on the terms and conditions set forth in this agreement.

I have been advised by my attorney of the nature of the charge to which I am entering my guilty plea. I have been advised by my attorney of the nature and range of the possible sentence, and that I will not be able to withdraw my guilty plea if I am dissatisfied with the sentence the court imposes.

My guilty plea is not the result of force, threats, assurance or promises other than the promises contained in this agreement. I agree to the provisions of this agreement as a voluntary act on my part and I agree to be bound according to its provisions.

I fully understand that, if I am granted probation or placed on supervised release by the Court, the terms and conditions of such probation/supervised release are subject to modification at any time. I further understand that, if I violate any of the conditions of my probation/supervised release, my probation/supervised release may be revoked and upon such revocation, notwithstanding any other provision of this agreement, I may be required to serve a term of imprisonment or my sentence may otherwise be altered.

I agree that this written plea agreement and any addendum, if any, contains all the terms and conditions of my plea and that promises made by anyone (including my attorney) that are not contained within this written plea agreement are without force and effect and are null and void.

I am satisfied that my defense attorney has represented me in a competent manner.

I am fully capable of understanding the terms and conditions of this plea agreement. I am not now on or under the influence of any drug, medication, liquor, or other intoxicant or depressant, which would impair my ability to fully understand the terms and conditions of this plea agreement.

Factual Basis

I further agree that the following facts accurately describe my conduct in connection with the offenses to which I am pleading guilty and that if this matter were to proceed to trial the government could prove these facts beyond a reasonable doubt:

Defendant THEODORE KRITZA met R.J. when R.J. was an undergraduate student who was interning for an Arizona law firm. At the time, Defendant was interning for T.E. who was hired by this same law firm to expand the firm's representation of athletes as part of a sports law practice.

In April 2001, T.E. and his company, Stratosphere Sports, were hired to represent R.J., a resident of Tucson, Arizona. Defendant's responsibilities at Stratosphere Sports consisted primarily of performing "day-to-day" tasks for R.J., such as organizing R.J.'s finances, facilitating the payment of R.J.'s credit card bills, communicating with R.J.'s family, and assisting R.J. in the purchase of automobiles and household items.

By approximately April 2005, Defendant had opened his own business located in Gilbert, Arizona, under the name Stratosphere Management, LLC ("Stratosphere Management"). Defendant was hired by R.J. to continue to provide day-to-day assistance, including organizing R.J.'s financial accounts and ensuring that R.J.'s bills were paid. R.J. agreed to pay Stratosphere Management between $90,000.00 and $250,000.00 per year for Defendant's services.

## The Scheme to Defraud and Its Execution

After 2005 and continuing through about 2013, Defendant KRITZA, knowingly devised a scheme and artifice to fraudulently obtain line of credit and loan proceeds from Alliance Bank. Defendant signed R.J.'s name without authorization on loan and line of credit documents so that Alliance Bank would advance funds to Defendant for Defendant's personal use. Defendant initially had authorization from RJ to use up to $500,000 on line of credit 4825 for Defendant's business ventures. However, after 2005, Defendant renewed lines of credit and a loan (accounts ending in 4825, 5289, 5297, and 9169) under R.J.'s name in the amount of approximately $3.1 million by signing R.J.'s name without R.J.'s knowledge or authorization. Kritza used the fraudulently obtained line of credit and loan funds to pay for personal expenses and to make investments in Defendant's companies, all without the knowledge and authorization of RJ and Alliance Bank. The forged line of credit and loan documents contained material misrepresentations that RJ had signed the documents and authorized the lines of credit and the loan. These material misrepresentations were capable of influencing Alliance Bank to fund the lines of credit and the loan. Defendant used approximately $2.18 million of R.J.'s money to make principle and interest payments on the lines of credit and loan.

In 2011, as part of the scheme to defraud R.J. and Alliance Bank, Defendant opened an Alliance Bank money market account ending 4655 in R.J.'s name by forging R.J.'s signature. Defendant opened account 4655 to conceal from R.J. the transfer of fraudulent loan advances and the

unauthorized transfers of R.J.'s personal funds to Defendant's bank accounts. Between December 2011, and October 2013, Defendant used account 4655 to transfer fraudulent loan advances and R.J.s personal funds to defendant in the total amount of $2.1 million, all without authorization.

In the fall of 2012, while purchasing a home, R.J. learned that there was an outstanding loan under his name at Alliance Bank, loan 9169. R.J. also learned that Defendant had renewed and initiated several lines of credit and a loan in R.J.'s name without R.J.'s authorization. Defendant was notified that he was to stop accessing any funds using R.J.'s name, including loan 9169.

However, after Defendant was told to stop accessing funds under R.J.'s name, beginning on October 15, 2012, and continuing through September 27, 2013, Defendant initiated advances against loan 9169 totaling $125,000.00. These advances were also initiated by Defendant without R.J.'s knowledge or authorization. In October 2013, R.J. froze loan 9169. On December 27, 2013, there was an outstanding balance of approximately $455,437.00 on loan 9169.

### Count 7
### Bank Fraud
### (18 U.S.C. § 1344(2))

On November 15, 2012, at or near Tucson, Arizona, within the District of Arizona, Defendant, THEODORE KRITZA, with the intent to defraud, knowingly carried out a scheme to defraud Alliance Bank, as further described above, to obtain loan funds from Alliance Bank. Defendant executed his scheme to defraud by forging R.J.'s name on a Change in Terms Agreement and a Disbursement Request (collectively "loan documents") and submitting the forged loan documents to Alliance Bank to obtain funds for his personal use under loan 9169, all without the knowledge or authorization of R.J. The forged signatures of R.J. on the loan documents that Defendant submitted to Alliance Bank were materially false statements capable of causing Alliance Bank to loan funds under R.J.'s name and credit. As a result of the materially false misrepresentations on the forged loan documents, Alliance Bank released approximately $495,000.00 in loan funds to Defendant under loan 9169.

Alliance Bank is a federally insured financial institution.

1

2

**Count 15**
**18 U.S.C. §1343**
**(Wire Fraud)**

3

4

     On or about June 14, 2012, Defendant, THEODORE KRITZA, for the purpose of and as an essential part of executing the scheme to defraud described above, with the intent to defraud, that is the intent to deceive, knowingly transmitted by means of wire communication in interstate commerce writings, signals, and sounds, that is, an email from Defendant's gmail account to E.S. at Alliance Bank in Tucson, Arizona, to transfer $2,210.90 from Defendant's Stratosphere Group account ending in 1497 to pay interest on the loan 9169. This email was transmitted as an essential part of the execution of the scheme to defraud because it directed Alliance Bank employee E.S. to pay interest on loan 9169 so that Defendant could continue to have ongoing access to loan 9169, which he had no lawful authority to access.

5

6

7

8

9

10

11

12

Defendant agrees to pay restitution to victim R.J. in the amount of $4,794,874.41.

13

Defendant agrees that the intended loss is at least $4,794,874.41.

14

15

16

_____     _____

Date                         Theodore Kritza

17

                                     Defendant

18

19

20

21

22

23

24

25

26

27

28

U.S. v. Kritza
4:17-CR-938-TUC-CKJ (EJM)
4/29/21
Page 16

## DEFENSE ATTORNEY'S APPROVAL

I have discussed this case and the plea agreement with my client in detail and have advised the Defendant of all matters within the scope of Fed. R. Crim. P. 11, the constitutional and other rights of an accused, the factual basis for and the nature of the offense to which the guilty plea will be entered, possible defenses, the consequences of the guilty plea (including the maximum statutory sentence possible), and that the Defendant is waiving the right to appeal or otherwise challenge the conviction and sentence. I have discussed the concept of the advisory Sentencing Guidelines with the Defendant. No assurances, promises, or representations that are not contained in this written agreement have been given to me or to the Defendant by the United States or any of its representatives. I have concluded that the entry of the plea as indicated above on the terms and conditions set forth in this agreement are in the best interests of my client. I agree to make a bona fide effort to ensure that the guilty plea is entered in accordance with all the requirements of Fed. R. Crim. P. 11.


_____                    _____
Date                                   Michael Areinoff
                                       Jay Marble
                                       Jordan Malka
                                       Attorneys for Defendant

U.S. v. Kritza
4:17-CR-938-TUC-CKJ (EJM)
4/29/21
Page 17

1

## GOVERNMENT'S APPROVAL

2        I have reviewed this matter and the plea agreement.  I agree on behalf of the United

3  States that the terms and conditions set forth are appropriate and are in the best interests of

4
   justice.
5

6                                        GLENN B. McCORMICK
                                         Acting United States Attorney
7                                        District of Arizona

8

9      *April 29, 2021*

10    Date                                Sandra M Hansen

11                                        Sandra M. Hansen
                                          Jane L. Westby
12                                        Assistant U.S. Attorneys

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
   U.S. v. Kritza
   4:17-CR-938-TUC-CKJ (EJM)
   4/29/21
   Page 18